IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LORETTA MORVANT,** *ET AL.* | § | CIVIL ACTION |
| | § | |
| **VERSUS** | § | NO. 13-05845-LMA-DEK |
| | § | |
| **OIL STATES INTERNATIONAL, INC.** | § | JUDGE LANCE M. AFRICK |
| **AND OIL STATES INDUSTRIES, INC.** | § | |
| | § | MAGISTRATE DANIEL E. KNOWLES, III |
| | § | |

DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO
PLAINTIFFS' PUNITIVE DAMAGES CLAIMS AND THE
<u>ESTATE'S WRONGFUL DEATH AND SURVIVAL CLAIMS</u>

**MAY IT PLEASE THE COURT:**

Defendants, Oil States International, Inc. and Oil States Industries, Inc. (collectively, the "Defendants"), submits this memorandum in support of their motion for partial summary judgment in favor of Defendants and against the Plaintiffs, Loretta Morvant, Individually, On behalf of the Estate of Timothy Morvant, Sr.[1], and as parent and natural Tutrix of Timothy Morvant, Jr., the child of Loretta Morvant and Timothy Morvant, Sr., Timothy Morvant, Jr., Individually, and Candace Morvant, Individually (collectively, the "Plaintiffs") and asks the Court to dismiss with prejudice all of the Plaintiffs' claims for punitive damages and the Estate's wrongful death and survival claims (the "Motion"). Defendants further respectfully move for an order seeking (i) a declaration that Louisiana law applies to Plaintiffs' claims herein, including Plaintiffs' punitive damages claims, (ii) the dismissal of all claims of the Plaintiffs for punitive damages (iii) the dismissal of all claims of the Estate, and (iv) the dismissal of the Estate as a party to this action.

---

[1] The Estate of Timothy Morvant, Sr. shall hereinafter be referred to as the "Estate."

I.     SUMMARY

This is a Louisiana wrongful death case arising out of workplace accident that resulted in the death of Timothy Morvant, Sr. ("Morvant" or "Decedent") in Houma, Louisiana. Mr. Morvant's employer, Oil States Skagit Smatco, L.L.C. ("OSSS"), is immune from tort liability under the Louisiana Worker's Compensation statute. Therefore, Plaintiffs have asserted their wrongful death and survival claims against OSSS' direct and indirect parent companies in a legally and factually baseless attempt to circumvent employer immunity.

Oil States Industries, Inc. ("OSI") is OSSS' sole shareholder and direct parent company; Oil States International, Inc. ("International") is, in turn, OSI's parent company. Plaintiffs' claims are predicated upon theories of negligence and gross negligence for the Defendants' alleged failure to adequately manage, supervise, and direct their subsidiary in the performance of its operations and/or implement corporate safety policies. Plaintiffs' wrongful death and survival claims are brought pursuant to Louisiana Civil Code arts. 2315.1 and 2315.2. Among other things, the Plaintiffs seek exemplary or punitive damages. *See* Plaintiffs' First Amended Complaint (the "Amended Complaint") at ¶¶ 5.1-6.3.

Defendants move for summary judgment seeking a declaration that Louisiana law applies to Plaintiffs' claims herein, dismissal of all claims for punitive damages by all Plaintiffs and dismissal of all of the Estate's claims against the Defendants. Louisiana law does not provide for the recovery of punitive damages in wrongful death cases. Therefore, all claims herein for punitive damages must be dismissed as a matter of law. Likewise, Louisiana law does not permit a deceased's estate to recover damages for wrongful death or survival. Thus, the claims of the Estate must be dismissed as the Estate lacks standing to bring such claims. The dismissal of the

Estate's wrongful death, survival, and punitive damages claims disposes of all the Estate's claims herein, warranting that party's dismissal, with prejudice, from the case.

## II.  STAGE OF THE PROCEEDING

Plaintiffs originally filed suit in the United States District Court for the Southern District of Texas.  The case was subsequently transferred to the United States District Court for the Eastern District of Louisiana on convenience grounds.[2]  Trial is set for April 7, 2014.  Discovery is ongoing, but further discovery is not required for the purpose of this motion.

## III.  BACKGROUND

### A.  Statement of Undisputed Facts

1.  On June 4, 2012, Timothy Morvant, Sr. was injured in a workplace accident at Oil States Skagit Smatco L.L.C.'s ("OSSS") 100 Ton Shop in Houma, Louisiana (the "Shop").[3]

2.  At the time of the accident, Mr. Morvant was employed by OSSS as a senior welder/fitter.[4]  Mr. Morvant had been employed by OSSS for fifteen (15) years prior to the accident.[5]

3.  On the date of the accident, Mr. Morvant was fabricating the 501[6] wall part of a large winch.  The 501 wall ultimately fell on Mr. Morvant and he died from his injuries in Louisiana that same day.[7]

---

[2] *See* Order of Transfer, Rec.Doc. 15, USDC, SDTX, C/A #3:13-cv-00091, dated 09/16/2013.

[3] The date and location of Mr. Morvant's injury are undisputed.  *See* Deposition of Michael Bradshaw, attached hereto as **Exhibit 1**, at 22:18-21.

[4] *See* OSI (MORVANT) 0001-0002, attached hereto as **Exhibit 2;** *see also*, Deposition of Michael Bradshaw, attached hereto as **Exhibit 1**, at 42:7-18.

[5] *See* Affidavit of Jimmy Ramagost, attached hereto as **Exhibit 3**, at ¶ 6.

[6] "501" is the number of the wall section in the specifications for the winch.

[7] It is undisputed that the winch wall fell on Mr. Morvant and that he died in Louisiana later that day.  *See also* Affidavit of Jimmy Ramagost, **Exhibit 3**, at ¶ 9.

4. OSI holds a 100% membership interest in OSSS.[8] International owns 100% of the shares of OSI.[9]

5. The Shop floor contains braces affixed to the floor for use in bracing heavy items, including winch walls, which need to stand upright during the fabrication process. These braces are located throughout the Shop and were available for Mr. Morvant's use on June 4, 2012.

6. Instead of using the affixed braces to secure the 501 wall in an erect position, Mr. Morvant used a "dog" leg to hold the wall upright. The 501 wall ultimately fell on Mr. Morvant and he died from his injuries in Louisiana that same day.[10]

B. **Residency of Plaintiffs and Decedent**

Plaintiffs admit that they are all Louisiana residents. *See* Amended Complaint at ¶¶ 1.1-1.3. Further, Mr. Morvant was employed by OSSS in Houma, Louisiana, resided in Louisiana throughout his employment with OSSS, and was domiciled in Louisiana at the time of his death.[11] Notably, both the underlying accident and Mr. Morvant's death—the genesis for this lawsuit – occurred in Louisiana.[12]

IV. **SUMMARY JUDGMENT STANDARD**

Where the sole issue on summary judgment involves the Court's determination of what law applies, the traditional standard for summary judgment does not apply. *See* Memorandum

---

[8] *See* OSI (MORVANT) 00264, attached hereto as **Exhibit 4**; Affidavit of Jimmy Ramagost, **Exhibit 3**, at ¶ 13; Deposition of Michael Bradshaw, attached hereto as **Exhibit 1**, at 75:25 – 76:23.

[9] *See id.;* Affidavit of Jimmy Ramagost, **Exhibit 3**, at ¶ 16; Deposition of Michael Bradshaw, attached hereto as **Exhibit 1**, at 75:25 – 76:23.

[10] It is undisputed that the winch wall fell on Mr. Morvant and that he died in Louisiana later that day. *See also* Affidavit of Jimmy Ramagost, **Exhibit 3**, at ¶ 9.

[11] *See* Affidavit of Jimmy Ramagost, **Exhibit 3**, at ¶¶ 6-7.

[12] *Id*. at ¶ 9.

and Order, *Vargas v. Kiewit Louisiana, Co.*, 4:09-cv-02521 2012 WL 1029517 at *2 (S.D. Tex. 3/26/12) (citing *Nunez v. Hunter Fan Co.*, 920 F.Supp. 716, 717-18 (S.D. Tex. 1996)). The determination of what law applies is a question of law. *Woodfield v. Bowman*, 193 F.3d 354, 358 (5th Cir. 1999). Specifically, in a choice of law scenario, the traditional rule that controverted factual determinations be resolved in the non-movant's favor is not applicable. *Nunez*, 920 F.Supp. at 717-18 & n.2. "Thus, the Court must disregard Plaintiffs' arguments urging the Court to deny summary judgment because an issue of material fact exists, and instead focus on whether the parties have presented sufficient evidence to make the choice of law determination." *Vargas*, 2012 WL 1029517 at *2.

**V.     LEGAL ANALYSIS**

   **A.     Louisiana Law Governs All Claims in This Matter**

Louisiana law governs this dispute. Plaintiffs assert wrongful death and survival claims under the *Louisiana Civil Code*. *See* the Amended Complaint at ¶¶ 11 4.1-4.9. Plaintiffs' claims for punitive damages are subject to Louisiana law because they are derived from Louisiana tort claims. *See Gauthier v. Union Pacific Railroad Co.*, 644 F.Supp.2d 824, 844 (E.D. Tex. 2009) (holding that punitive damages claims were subject to Louisiana law where underlying tort claims were governed by Louisiana law). In Louisiana, "punitive or other penalty damages are not allowable unless expressly authorized by statute." *Ross v. Conoco, Inc.*, 828 So.2d 546, 555 (La. 10/15/02). Therefore, Plaintiffs' claims for punitive damages are barred as a matter of law.

In an attempt to evade the applicability of the Louisiana bar on punitive damages, Plaintiffs base their claim for punitive damages exclusively upon Articles 3546, 3543, and 3547 of the Louisiana Civil Code. *See* Amended Complaint at ¶¶ 4.12-4.17. However, Plaintiffs' reliance upon Articles 3546, 3543 and 3547 in support of their claim for punitive damages is

misplaced.  <u>These Articles are conflicts of law rules and do not provide an independent basis for punitive damages under Louisiana law</u>.  *See* La. CC arts. 3546, 3543, and 3547 (Book IV, Conflict of Laws).  Plaintiffs' punitive damages claims should be dismissed on this basis.  In an exercise of caution, however, Defendants specifically address Plaintiffs' legally unsound theory underlying their claims for punitive damages in the alternative.

**B.** **Articles 3546, 3543, and 3547 of the Louisiana Civil Code Do Not Apply**

(1) Louisiana Choice of Law Rules Do Not Apply

As noted above, Articles 3546, 3543, and 3547 of the Louisiana Civil Code are choice of law rules.  However, Louisiana choice of law rules do not apply to this case, which was transferred for convenience pursuant to § 1404(a) from a Texas forum.  *See e.g., Lucarelli ex rel. Taylor Estate v. DVA Renal Healthcare, Inc.*, 2008 WL 5586615 n.7 (W.D. La. 2008) (nothing that Louisiana conflicts of law provisions do not apply to case transferred from Nevada).  Although a federal district court sitting in diversity applies its forum state's choice-of-law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this rule is displaced for cases transferred pursuant to 28 U.S.C. § 1404(a), *Van Dusen v. Barrack,* 376 U.S. 612, 639 (1964); *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990).

> When the transfer is instead made for the convenience of the parties, the transferee court applies the choice-of-law rules that would have applied in the transferor court had the case remained there.

*Nat'l Union Fire Ins. Co. v. Amer. Eurocopter Corp.*, 692 F.3d 405, 408 n.3 (5th Cir. 2012)(citing *Tel-Phonic Services, Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134 (5th Cir. 1992)).  This case was transferred from the Southern District of Texas.  Accordingly, Texas choice-of-law rules apply, rather than Louisiana choice of law rules.

>  (2) Articles 3546, 3543, and 3547 Could Not Apply under Texas Choice-of-Law Rules

Aside from direct application under *Klaxon*, the only way for Louisiana choice-of-law rules to apply here would be if Texas followed the doctrine of *renvoi*. Essentially, the doctrine of *renvoi* requires inclusion of the non-forum state's conflict-of-laws rules when the forum decides that the non-forum state's law is to be resorted to. 15A C.J.S. CONFLICT OF LAWS § 37 (2013). The doctrine of *renvoi* is disfavored. *Authenment v. Ingram Barge Co.*, 878 F.Supp.2d 672, 679 n. 2 (E.D.La. 2012); *Arochem Corp. v. Wilomi, Inc.,* 962 F.2d 496, 498 n. 3 (5th Cir. 1992); RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 8. Texas choice-of-law rules do not employ *renvoi*.

In tort cases, Texas courts generally follow the analysis in RESTATEMENT §§ 6 and 145. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000). RESTATEMENT Section 145 provides:

> The rights and liabilities of the parties with respect to an issue in tort are determined by the *local law* of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in §6.

*See* RESTATEMENT § 145(1) (emphasis added). RESTATEMENT Section 145 expressly provides that it is the "local law" of the prevailing state that will be applied to the disputed issue. *Id.* "Local law" is defined in RESTATEMENT § 4 to exclude the prevailing state's conflict of law rules:

> As used in the Restatement of this Subject, the "local law" of a state is the body of standards, principles and rules, *exclusive of its rules of Conflict of Laws*, which the courts of that state apply in the decision of controversies brought before them.

*Id.* at § 4(1) (emphasis added). Accordingly, *renvoi* is avoided. *See Lucarelli*, 2008 WL 5586615 at *3 (discussing RESTATEMENT § 4's definition of "local law" excludes conflict of

laws provisions of prevailing state). As a matter of law, therefore, Articles 3546, 3543, and 3547 do not apply to Plaintiffs' claims herein. Regardless, an analysis under Texas' choice of law rules directs the application of Louisiana law.

### C. The Law of the State with the Most Significant Relationship to the Accident and the Parties Applies

#### (1) Texas Choice of Law Rules Apply

A choice of law analysis is not necessary unless there is a conflict between the laws of the jurisdictions whose law potentially controls. *Duncan v. Cessna Aircraft Co*, 665 S.W.2d 414, 419 (Tex. 1984); *see also Tobin v. AMR Corp.*, F.Supp.2d 406, 412 (N.D. Tex. 2009). A clear conflict exists between the law of Louisiana and the law of Texas as it pertains to the Plaintiffs' punitive damages claims. Louisiana law does not allow the recovery of punitive damages except in specific cases, none of which is applicable here. *See* La. Civ. Code Ann. arts. 2315.3, 2315.4 and 2315.7, respectively. Texas law, by contrast, generally permits punitive damages in tort cases subject to a $200,000 cap. *See* TEX. CIV. PRAC. & REM. CODE § 41.008(a) and (b).

#### (2) Texas Utilizes the "Most Significant Relationship" Test

When such a conflict of laws exists, Texas courts determine which state's law controls by applying the "most significant relationship test." *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) (citing RESTATEMENT (SECOND) OF CONFLICTS OF LAWS §§ 6, 145 (1971); *Duncan v. Cessna Aircraft Co.*, 665, 665 S.W.2d at 420-421; *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979)). As previously noted, Texas courts generally follow the analysis in RESTATEMENT §§ 6 and 145 in tort cases. *See Torrington*, 46 S.W.3d at 848. "Section 6 of the RESTATEMENT contains the general principles involved in the conflicts analysis whereas RESTATEMENT § 145 lists the factual matters to be considered when applying the § 6 principles to a given case." *Gauthier*, 644 F.Supp.2d at 839 (citing *Perez v. Lockheed Corp. (In re Air*

*Disaster at Ramstein Air Base)*, 81 F.3d 570, 577 (5th Cir. 1996)).  The factual matters in § 145 are determinative of the most significant relationship issue.  *See id.*

RESTATEMENT Section 6 directs a court to follow a statutory directive on choice of law of its own state.  *See* RESTATEMENT § 6(1).  Where there is no such directive, § 6(2) identifies the factors relevant to the choice of law analysis, which includes concerns regarding predictability, the policies of the forum and other interested states, and the needs of the interstate system, among other things.[13]  *See also Torrington*, 46 S.W.3d at 848 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971); *Gutierrez,* 583 S.W.2d at 318-19)).  RESTATEMENT Section 145(2) sets forth four contacts to be taken into account when applying § 6: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.  *See also Torrington*, 46 S.W.3d at 848 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971)); *Black v. Toys R US-Delaware, Inc.*, No. 08-3315, slip op. 2010 WL 4702344 (S.D. Tex. Nov. 10, 2010) at *8.

The Texas legislature has enacted legislation to govern choice of law in specific circumstances.  Section 71.031(a) of the Texas Civil Practice and Remedies Code provides for choice of law when an action is brought in Texas based on an act or omission occurring out of state.  Section 71.031(c) directs that "[t]he court shall apply the rules of substantive law that are appropriate under the facts of the case."  The Texas Supreme Court has interpreted this phrase to

---

[13] The specific considerations listed in RESTATEMENT § 6 are: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

encompass an analysis of the "most significant relationship" under RESTATEMENT §§ 6 and 145. *Total Oilfield Services, Inc. v. Garcia,* 711 S.W.2d 237, 239 (Tex. 1986); *see also Gutierrez,* 583 S.W.2d 312, at 317-18 n. 3. Accordingly, the most significant relationship test will determine whether Louisiana law or Texas law applies to the Plaintiffs' claims for punitive damages.

(3) Texas Choice of Law Rules Direct the Application of Louisiana Law

When evaluated under RESTATEMENT §§ 6 and 145, it is clear that Louisiana has the most significant relationship to Plaintiffs' punitive damages claims. Moreover, in personal injury cases, the RESTATEMENT defers to the law of the jurisdiction in which the underlying accident occurred. *See* RESTATEMENT § 146. Therefore, there is a presumption in this case that Louisiana law applies.

The four contacts enumerated in RESTATEMENT § 145 support an application of Louisiana's punitive damages bar. A summary of the four contacts in this case, favoring the application of Louisiana law, is set forth below:

| CONTACT | LOUISIANA | TEXAS | NEITHER |
|---|---|---|---|
| The place where the injury occurred | X | | |
| The place where the conduct causing the injury occurred | X | | |
| The domicile, residence, nationality, place of incorporation and place of business of the parties | • All Plaintiffs' domicile, residency<br>• Employer (OSSS) domicile, residency, place of business, Decedent's domicile, residency<br>• Defendants' place of business | • Defendants' place of business | • Defendants' domicile<br>• Defendants' place of incorporation<br>• Employer's place of incorporation |
| The place where the relationship between the parties is centered | X | | |

### *(i)   The Injury Occurred in Louisiana*

It is undisputed that the injury underlying Plaintiffs' punitive damages claims occurred **in Louisiana**.  The fact that the accident occurred in Louisiana is entitled to substantial weight per the RESTATEMENT.  Comment (e) to RESTATEMENT § 145 provides that "[i]n the case of personal injuries or of injuries to tangible things, the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law (see §§ 146-147)."  Notably, Comment (e) references RESTATEMENT § 146, which creates a presumption in favor of the law of the state in which the injury occurred.  *See* RESTATEMENT § 145 cmt. (e).  Further, the Fifth Circuit has acknowledged that the location of the injury is an important factor in determining the most appropriate law to apply.  *See Huddy v. Fruehauf Corp.*, 953 F.2d 955, 957 (5th Cir. 1992).  <u>As such, this Court should give deference to the locality of the injury—Louisiana – when determining the choice of law issue</u>.

### *(ii)   The Conduct Causing the Injury Occurred in Louisiana*

The injury in this case was caused by conduct immediately preceding the accident **in Louisiana**.  To the extent Plaintiffs attempt to attribute the cause of the injury to corporate decisions made by the Defendants in Texas, such alleged decisions were, at best, tangentially related to the accident and provide but a single tenuous Texas tie, which is insufficient to overcome the significant and direct relationship between the accident and Louisiana.

That both the injury and most, if not all, of the cause of the injury occurred in Louisiana is, for all practical purposes, determinative according to the RESTATEMENT, which further states:

> So, for example, a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there.  **Thus, subject only to <u>rare exceptions</u>, the local law of the state where conduct and injury occurred will be applied** to determine whether the actor satisfied the minimum standards of acceptable conduct and **whether the**

> **interest affected by the actor's conduct was entitled to legal protection** (see §§ 146-147).

RESTATEMENT § 145 cmt. (d) (emphases added). Comment (d) to Section 145 also directs the analysis to § 146's presumption in favor of the law of the state of the injury.

### *(iii)   Decedent Resided in Louisiana*

With respect to residency, the evidence demonstrates that Decedent was domiciled and resided in Louisiana throughout his employment with OSSS and at the time of his death. Therefore, Decedent's residency at the time of his accident favors an application of Louisiana law. Likewise, Plaintiffs are all domiciliaries and residents of Louisiana, which also points to the application of Louisiana law.

Like the preceding factor, the only Texas connection is that Defendants conduct some of their operations there. However, this single, indirect tie is substantially outweighed by the multiple connections that the relevant parties have to Louisiana: Plaintiffs' domicile; Plaintiffs' residency; Decedent's domicile; Decedent's residency; OSSS' domicile; OSSS' residency; and OSSS' place of business. The single Texas connection is marginal at best and, as a whole, this factor points to the application of Louisiana law.

### *(iv)   The Relationship of the Parties is Centered in Louisiana*

Subsection (d) from RESTATEMENT Section 145 considers the place where the relationship, if any, between the parties is centered. The only possible connection Decedent had with International or OSI was through his employment with OSSS, which occurred in Louisiana. With respect to the Plaintiffs, they had no relationship with International or OSI prior to the accident. The overall relationship between the parties consists of an accident that occurred in Louisiana. Consequently, this factor also weighs in favor of the application of Louisiana law.

Therefore, all four contacts outlined in RESTATEMENT § 145 direct an application of Louisiana law to Plaintiffs' claims for wrongful death and survival, as the place of injury, place of conduct, place of residency, and place of day-to-day relationship between the parties involve Louisiana rather than Texas.

        **D.**     **R<small>ESTATEMENT</small> Section 6 Favors an Application of Louisiana Law**

RESTATEMENT Section 6 considers a state's policy interests in a choice of law analysis, as well as overall uniformity in an application of choice of law principles.  In addition, Section 6 considers the "protection of justified expectations" and the "basic policies underlying the particular field of law."  RESTATEMENT § 6(2)(d) and (e).  Here, the policy interests at play favor an application of Louisiana law because Texas has no overriding interest in applying Texas law to punitive damage claims arising out of an accident occurring in Louisiana, where neither the Decedent nor any of the Plaintiffs are citizens or residents of Texas.

        (1)     Plaintiffs have No Justifiable Expectation of the Application of Texas Law

Plaintiffs do not have a reasonable expectation that Texas law would apply to their claims, as Plaintiffs are Louisiana residents living in Louisiana.  Moreover, Texas has no overriding interest in having its law applied to Plaintiffs' punitive damages claims because Plaintiffs are not Texas citizens.  Thus, Texas as the transferor forum state does not have a policy interest in awarding punitive damages to any of the Plaintiffs for an incident that occurred in Louisiana.

        (2)     There are No Policy Reasons Favoring the Application of Texas Law

Comparatively, based on the facts here, there are no policy reasons favoring an application of Texas law to Plaintiffs' punitive damages claims.  Decedent was living and working in Louisiana at the time of his injury.  Furthermore, since the June 4, 2012 incident, all of the civil, law enforcement and administrative investigations by local, state and federal

authorities have been conducted in Louisiana, including the Terrebonne Parish Sheriff's Office, who performed the initial accident investigation as a first responder, and the U.S. Department of Labor Occupational Safety and Health Administration ("OSHA"). Witnesses have been interviewed in Louisiana, Plaintiffs will be deposed in Louisiana, and all accident site evidence has been preserved in Louisiana.

(3)   Predictability Favors the Application of Louisiana Law

The policy interests related to wrongful death and survival claims focus on the location of the injury. Thus, from a predictability standpoint, an application of Louisiana law is justified based on the facts before the Court. *See Gauthier,* 644 F.Supp.2d at 824. In *Gauthier*, plaintiffs sued for wrongful death after an Amtrak train traveling on a Union Pacific track struck the vehicle of Larry Gauthier, decedent, at the "Eddy Street crossing" in Vinton, Louisiana. *Id.* at 829-30. After applying the "most significant relationship" factors to the facts and determining that Louisiana law applied, the Court in *Gauthier* noted, "[a]ll key elements of the Plaintiffs' allegations center around the Eddy Street crossing." *Id.* at 840. Further, the Court stated, "the City of Vinton's involvement with the Eddy Street crossing and Union Pacific's history with the Eddy Street crossing (which the Plaintiffs emphasize as part of their case), put the crossing, located in Louisiana, at the center of the case." *Id.* Thus, the Court determined that the only relationship the case had with Texas was the fact that Union Pacific conducted business in Texas and a number their employees were reportedly located in Texas. *Id.*

Likewise, here, all key elements of the Plaintiffs' allegations revolve around the accident site in Houma, Louisiana. The only relationship to Texas is the fact that the indirect and direct parent companies of Decedent's employer have their corporate offices in Texas. Thus, all of the RESTATEMENT factors weigh in favor of applying Louisiana law to Plaintiffs' punitive damages claims.

### E. Plaintiffs' Claims for Punitive Damages are Barred

Louisiana has a general public policy against punitive damages. *See Ross v. Conoco, Inc.*, 828 So.2d 546, 555 (La. 10/15/02). In Louisiana, "punitive or other penalty damages are not allowable unless expressly authorized by statute." *Ross*, 828 So.2d at 555. The only statutes permitting the recovery of punitive damages in Louisiana pertain to cases involving underage pornography, drunk driving, and child molestation, none of which is alleged here. *See* La. Civ. Code Ann. arts. 2315.3, 2315.4 and. 2315.7, respectively. Therefore, all of the Plaintiffs' claims for punitive damages must be dismissed as a matter of law.

### F. The Estate has No Standing to Assert Wrongful Death or Survival Claims under Louisiana Law

Under Louisiana law, the Estate does not have standing to assert wrongful death or survival claims. Louisiana Civil Code Articles 2315.1 and 2315.2 set forth a hierarchy of beneficiaries who can recover damages in a survival action and a wrongful death suit, respectively. The classes of beneficiaries and the applicable hierarchy are the same under both statutes: (1) the surviving spouse and child or children of the deceased, or either the spouse or the child or children; (2) the surviving father and mother of the deceased; (3) the surviving brothers and sisters of the deceased; or (4) the surviving grandfathers and grandmothers of the deceased. *See* La. C.C. arts. 2315.1 and 2315.2. The rights are granted "in order of exclusionary preference," which means that a lower class cannot recover unless there are no members of a higher class. *See Estate of Birch*, 39 So.3d at 747. Courts have no authority to judicially expand the classes of beneficiaries identified in Articles 2315.1 and 2315.2. *See Estate of Birch v. Hancock Holding Co.*, 39 So.3d 742, 749 (La.App. 1 Cir. 5/7/10).

The Estate's claims are subject to dismissal because the estate of a decedent is not included in any of the enumerated categories of beneficiaries under either statute. "To recover

under a claim for wrongful death and survival, a plaintiff must fall within the class of persons designated as a beneficiary as prescribed by La. Civ. Code arts. 2315.1 and 2315.2." *Turner v. Busby*, 883 So.2d 412, 416 (La. 9/9/04). Thus, the Estate has no standing to assert wrongful death or survival claims. *See Estate of Francis v. City of Rayne*, 966 So.2d 1105, 1118 (La.App. 3 Cir. 10/3/07). The Estate's claims should, therefore, be dismissed.

## VI. CONCLUSION

Defendants are entitled to summary judgment on all claims for punitive damages and the Estate's wrongful death and survival claims. These claims are barred under Louisiana law.

Louisiana law does not permit the recovery of punitive damages unless expressly authorized by statute. None of the three statutes permitting such recovery is applicable here. Therefore, all of the Plaintiffs' claims for punitive damages must be dismissed as a matter of law. As for the Estate's claims, the Estate lacks standing to assert claims for wrongful death or survival under Louisiana law. A decedent's estate is not among the categories of beneficiaries entitled to assert claims for wrongful death or survival. Thus, the Estate's claims must be dismissed for lack of standing. Finally, because dismissal of the Estate's wrongful death and survival claims, along with its claims for punitive damages, would dispose of all of its claims, the Estate must be dismissed from this lawsuit as well.

    Respectfully submitted:
**BLAND & PARTNERS P.L.L.C.**

/s/Matthew C. Guy
DAVID S. BLAND (LA Bar #1257)
dbland@blandpartners.com
MATTHEW C. GUY (LA Bar #31182)
mguy@blandpartners.com
ALLISON RAQUEL COLÓN (LA Bar #33068)
acolon@blandpartners.com
909 Poydras Street, Suite 1860

-17-

        New Orleans, LA 70112
        Telephone:   (504) 528-3088
        *Attorneys for Defendants, Oil States International, Inc. and Oil States Industries, Inc.*

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record through the Court's Case Management Electronic Case Files' electronic filing system on this 3rd day of February, 2014.

        /s/ Matthew C. Guy
        MATTHEW C. GUY (LA Bar #31182)