## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LORETTA MORVANT ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 13-5845** |
| **OIL STATES INTERNATIONAL, INC. ET AL.** | **SECTION I** |

### ORDER AND REASONS

Before the Court are two motions[1] for summary judgment filed by defendants. Plaintiffs have filed oppositions[2] to both motions, and defendants have filed reply memoranda.[3] For the following reasons, the motions are **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

On June 4, 2012, Timothy Morvant, Sr. ("Morvant") was tragically killed in a workplace accident.[4] Morvant was employed as a senior welder/fitter for 15 years by Oil States Skagit Smatco L.L.C. ("OSSS") at its facility in Houma, Louisiana.[5] OSSS is engaged in the design, manufacture, and refurbishment of winches and other products for the marine and offshore industries.[6] At the time of the accident, Morvant was fabricating a "501 wall," which is part of a large winch, when the wall fell and crushed him, causing his death.[7]

Plaintiffs, the surviving spouse and children of Morvant and Morvant's estate, filed the above-captioned lawsuit in the Southern District of Texas on March 27, 2013.[8] Plaintiffs did not

---

[1] R. Doc. Nos. 40, 42.
[2] R. Doc. Nos. 50, 51.
[3] R. Doc. Nos. 55, 56.
[4] R. Doc. No. 42-7, ¶¶ 1, 6; R. Doc. No. 51-1, ¶¶ 1, 6.
[5] R. Doc. No. 42-7, ¶¶ 1, 2; R. Doc. No. 51-1, ¶¶ 1, 2.
[6] R. Doc. No. 42-7, ¶ 3; R. Doc. No. 51-1, ¶ 3.
[7] R. Doc. No. 42-7, ¶¶ 4, 6; R. Doc. No. 51-1, ¶¶ 4, 6.
[8] R. Doc. No. 1.

sue OSSS,[9] which is presumably immune from tort liability under workers' compensation law. Plaintiffs instead brought claims against Oil States Industries, Inc. ("OSI") and Oil States International, Inc. ("International")[10] for their negligence in "failing to adequately manage, supervise, and direct their subsidiary in the performance of its operations and/or implement corporate safety policies."[11] The case was transferred to this Court on September 16, 2013.[12] A final pretrial conference is scheduled for March 12, 2014, and a jury trial is scheduled to begin on April 7, 2014.[13]

Defendants filed the instant motions on February 3, 2014. The first motion requests partial summary judgment with respect to plaintiffs' punitive damages claims and the estate's wrongful death and survival claims.[14] The second motion requests summary judgment with respect to all plaintiffs' claims on the basis that OSI and International did not owe a legal duty to Morvant.[15] Plaintiffs oppose both motions.[16]

---

[9] *See* R. Doc. No. 1.

[10] OSSS is a wholly owned subsidiary of OSI, which is in turn a wholly owned subsidiary of International. R. Doc. No. 40-5.

[11] R. Doc. No. 27, at 4. Plaintiffs allege a number of more particular acts of negligence, including: failure to ensure that safe work procedures were developed and implemented for working on or around heavy objects; failure to ensure that OSSS instituted proper safety measures to properly secure and/or brace the wall; failure to draft and implement written instructions with respect to the wall; failure to ensure that all employees of OSSS were adequately trained; failure to ensure that a risk assessment was conducted by OSSS with respect to Morvant's work; failure to ensure that proper warnings were posted in the area; failure to hire qualified personnel; and failure to supervise the persons responsible for safety at the OSSS facility. R. Doc. No. 27, at 4-5.

[12] R. Doc. No. 15.

[13] R. Doc. No. 23.

[14] R. Doc. No. 40-1, at 2.

[15] R. Doc. No. 42-1, at 2.

[16] R. Doc. Nos. 50, 51.

## STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**DISCUSSION**

**A.    Duty**

The threshold question in this case is whether OSI and International owed any duty to Morvant. A parent corporation generally does not incur any duty with respect to the employees of its subsidiaries by the mere fact of its ownership. *Bujol v. Entergy Servs., Inc.*, 922 So. 2d 1113, 1127-28 (La. 2004); *Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 717 (Tex. App. 2013). In both Texas and Louisiana, courts apply § 324A of the Restatement (Second) of Torts[17] in order to determine whether defendants like OSI and International owe a duty to the employees of their subsidiaries.[18] *Bujol*, 922 So. 2d 1113; *Little*, 409 S.W.3d 704. Section 324A states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>> (a) his failure to exercise reasonable care increases the risk of such harm, or
>> (b) he has undertaken to perform a duty owed by the other to the third person, or
>> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Although the existence of a duty is a question of law for the Court, the factual predicates for the imposition of that duty are a question for the fact finder. *See Johnson v. Abbe Eng'g Co.*, 749 F.2d 1131, 1133-34 (5th Cir. 1984) ("Finding sufficient evidence to support a jury verdict imposing liability under § 324A, we AFFIRM."); *Bujol*, 922 So. 2d at 1138 (reversing a jury's

---

[17] The Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 43 is a more recent version of this provision, but it has not yet been adopted by the courts.

[18] Although the parties dispute which state's law should apply to the case generally, both sides agree that the relevant framework with respect to duty is governed by § 324A of the Restatement. *See* R. Doc. No. 42-1, at 6; R. Doc. No. 51, at 6. Accordingly, no choice-of-law analysis is necessary at this stage because there is no conflict of law. *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) ("'If the laws of the states do not conflict [on the relevant issue], then no choice-of-law analysis is necessary.'") (quoting *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990)).

verdict regarding § 324A duties); *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 840 (Tex. 2000) ("In other words, absent any determination that the factual predicates giving rise to a legal duty were satisfied, the defendants' failure to use reasonable care was of no legal consequence."). A number of cases have examined a parent company's liability to its subsidiary's employees pursuant to § 324A.

In *Muniz v. National Can Corp.*, 737 F.2d 145 (1st Cir. 1984),[19] the plaintiff brought an action against the parent company of his employer for exposure to toxic lead fumes. *Id.* at 147. "Although [the parent company] was not his employer, [the plaintiff] contend[ed] that it [was] liable for his work-related injuries, because it was 'involved' with safety measures[.]" *Id.* The district court found as a matter of law that the parent company did not have a duty to provide safe working conditions and did not assume that duty from the plaintiff's employer. *Id.* The U.S. Court of Appeals for the First Circuit affirmed the district court and stated, "Neither mere concern with nor minimal contact about safety matters creates a duty to ensure a safe working environment for the employees of a subsidiary corporation." *Id.* at 148. The court found that the evidence did not show that the subsidiary relied on its parent corporation "by lessening or omitting its own safety measures." *Id.* at 149. The court concluded that the district court's finding was not clearly erroneous because the parent corporation merely "provided general safety guidelines[] not specifically directed to the concentration of lead in the workplace" and "intended for these general guidelines to be implemented by local management." *Id.*

In *Bujol*, two men were severely injured and one was killed when a flash fire occurred during valve maintenance at an air separation plant. 922 So. 2d at 1120. The direct employer paid workers' compensation benefits, but the plaintiffs sued the parent corporation for, among

---

[19] The Louisiana Supreme Court has noted that *Muniz* is "a seminal case on this issue." *Bujol*, 922 So. 2d at 1131.

other things, failure to supervise the facility, failure to prescribe proper procedures, and punitive damages. *Id.* at 1120-21. The plaintiffs alleged that this accident could have been prevented if the victims had used "barrier walls" as a shield from a possible fire. *Id.* at 1121-22. The evidence showed that the parent corporation issued a non-mandatory safety recommendation to some of its subsidiaries with respect to the use of such barrier walls. *Id.* at 1134.

The Louisiana Supreme Court in *Bujol* followed the analytical framework of § 324A of the Restatement and stated, "In determining whether a parent corporation affirmatively undertook the duty of safety owed by its subsidiary, courts have looked to the scope of the parent's involvement, the extent of the parent's authority, and the underlying intent of the parent . . . ." *Id.* at 1131. Reversing the jury's findings,[20] the court found that "the evidence presented did not establish that [the parent corporation] affirmatively undertook to provide [the subsidiary]'s employees with a reasonably safe place to work under § 324A, with regard to the entire plant or with regard to providing barrier walls around oxygen valves." *Id.* at 1133. The court also stated in the alternative that even if the threshold undertaking in the introductory clause of § 324A was satisfied, there was no evidence to support any of the required findings under subsections (a), (b), or (c). *Id.* at 1135-37.

In *Little*, the surviving spouse and children of a crane operator who was crushed to death by a large steel plate brought claims against his direct employer and its parent corporation. 409 S.W.3d at 706. The plaintiffs alleged that the parent corporation "had undertaken a responsibility

---

[20] The court originally applied a *de novo* standard of review, but also alternatively held that the findings would be the same under a manifest error standard. *Id.* at 1131. On rehearing, the court affirmed this alternative holding after the plaintiffs' challenged the court's use of the *de novo* standard. *Id.* at 1144-45. Although rehearing was granted "because at least some of the justices in the original majority were concerned about the propriety of the majority's decision in the original opinion to review the jury verdict in favor of the plaintiffs under a *de novo* standard, as opposed to a manifest error review," the court did not decide the question of which standard was proper. *Id.* at 1144. Regardless, the court's analysis was virtually identical on rehearing.

to ensure safety for [the subsidiary]'s employees, and had negligently and grossly negligently failed to perform that responsibility." *Id.* at 707. The trial court granted summary judgment in favor of the parent corporation, finding that there was no evidence of "any affirmative act establishing an undertaking of a duty toward [the decedent]." *Id.* at 708.

The Texas appellate court in *Little* reversed the grant of summary judgment with respect to the parent corporation. The court stated, "The Texas Supreme Court has held that in cases where a plaintiff alleges negligence in maintaining a safe workplace, the plaintiff must show that the party it asserts had a duty to provide a safe workplace had actual control or a right of control over the *specific* aspect of the safety and security of the premises that led to the plaintiffs['] injury." *Id.* at 717 (quoting *Morris v. Scotsman Indus., Inc.*, 106 S.W.3d 751, 754 (Tex. App. 2003)). The court noted that such a duty could be found where "the parent corporation had engaged in an undertaking which *directly* promoted the interests of its subsidiary in providing a safe workplace." *Id.* at 717 (quoting *Abdel-Fattah v. PepsiCo, Inc.*, 948 S.W.2d 381, 385-86 (Tex. App. 1997)) (citing *Johnson*, 749 F.2d at 1132-33 (5th Cir. 1984)). The appellate court found that the parent's activities, such as auditing the subsidiary for compliance with the parent's safety standards, expecting compliance with a safety manual, providing safety inspection forms, and requiring documentation of safety inspections, established a duty pursuant to § 324A. *Id.* at 719-21. The court held that this and other evidence established that the parent "went beyond merely supplementing [the subsidiary's] duty because it assumed the primary responsibility for [its] workplace safety" pursuant to § 324A(b). *Id.* at 722.

With these examples in mind, the Court turns to the summary judgment evidence presented by the parties. Both parties rely heavily on the deposition testimony of Michael

Bradshaw ("Bradshaw") and Martin Durocher ("Durocher").[21] Bradshaw is the Health, Safety, and Environmental ("HSE") Director of OSI.[22] Bradshaw's job requires him to provide assistance on HSE matters to nearly two dozen different OSI-owned facilities.[23] He manages the "Safety Management System" at all OSI facilities[24] and has oversight over the three HSE professionals that are employed by OSSS.[25] Bradshaw periodically participates in HSE audits of the facility,[26] performs routine visits to check on HSE matters, and provides assistance to develop new safety standards.[27] Furthermore, Bradshaw is responsible for the promulgation of minimum safety standards that all OSI subsidiaries must comply with, including the safety management system, and he approves any significant additional standards that a particular facility may wish to implement.[28] Bradshaw is the sole HSE professional employed by OSI.[29]

Durocher is the HSE manager for OSSS.[30] On a daily basis, Durocher observes the work being done at the facility and monitors for compliance with safety standards.[31] Durocher testified that there are three people "who participated in the selection of the rules, policies, procedures" related to HSE at OSSS: Durocher, Bradshaw, and Jeff Ledet, another HSE professional at OSSS.[32] Durocher testified that it was his decision to adopt the OSI safety standards that were produced by Bradshaw,[33] but he also admitted that OSI had the authority to obligate him to

---

[21] *See* R. Doc. Nos. 42-7, 51-2.
[22] R. Doc. No. 51-3, at 2; R. Doc. No. 56-3, at 1.
[23] R. Doc. No. 56-3, at 2-3; *see also* R. Doc. No. 51-3, at 7.
[24] R. Doc. No. 51-3, at 3.
[25] R. Doc. No. 51-3, at 4.
[26] R. Doc. No. 51-3, at 4.
[27] R. Doc. No. 51-3, at 5.
[28] R. Doc. No. 51-3, at 5-6.
[29] R. Doc. No. 51-3, at 7.
[30] R. Doc. No. 51-12, at 2.
[31] R. Doc. No. 51-12, at 3.
[32] R. Doc. No. 51-12, at 3.
[33] R. Doc. No. 51-12, at 4-5.

change OSSS's policies.[34] Durocher testified that he was reminded every month by an OSI employee that he needed to submit certain HSE records to OSI.[35] Durocher also stated that International had no involvement with any safety matters at OSSS.[36]

In addition to this testimony, the Court has reviewed the safety manuals and policies themselves. Document HSE 01, the safety management system that is in place at OSSS, bears the OSI logo on the cover and OSI's name on every page.[37] HSE 01 sets forth the roles of every employee in ensuring workplace safety,[38] the overall methods and processes used to identify and plan for hazards and, notably, examples of different kinds of hazards, including crush hazards.[39] Document HSE 02 relates to hazard communication and also bears a similar OSI insignia,[40] as does HSE 03 (relating to injury reporting)[41] and an employee safety handbook, which outlines general safety requirements and the personal protective equipment that is required of employees.[42] Additionally, the job safety analysis ("JSA") worksheets,[43] the JSA participant sign-in sheets,[44] and safety meeting sign-in sheets[45] all bear the OSI logo and do not mention OSSS.

---

[34] R. Doc. No. 51-12, at 5 ("Q: If Mike Bradshaw came to you and said: The president of the company has ordered me to instruct you to change your policies and procedures in a certain way, would you be obligated to do that? A: Yes.").

[35] R. Doc. No. 51-12, at 9.

[36] R. Doc. No. 51-12, at 12.

[37] R. Doc. No. 51-5, at 1.

[38] *See, e.g.*, R. Doc. No. 51-5, at 8 ("Operations management and supervisors are responsible for day-to-day activities. The facility HSE Manager will provide advice and assistance with guidance and assistance available from the OSI Corporate HSE Director.").

[39] R. Doc. No. 51-5, at 12 ("A safety hazard is anything that could endanger the immediate safety of an employee, for example, a pinch point, crush, or burn hazard.").

[40] R. Doc. No. 51-5, at 40.

[41] R. Doc. No. 51-5, at 59.

[42] R. Doc. No. 51-6, at 1.

[43] R. Doc. No. 51-4, at 1.

[44] R. Doc. No. 51-5, at 5.

[45] R. Doc. No. 51-8, at 1.

Based on the above, the Court finds that there is a genuine issue of material fact as to whether OSI undertook to assume a duty for Morvant's safety pursuant to § 324A of the Restatement. The actions of OSI go beyond those of the parent corporation in *Bujol*, which merely promulgated a non-binding safety standard. *See* 922 So. 2d at 1133. Conversely, Bradshaw enforced a set of mandatory minimum safety standards across all of OSI's subsidiaries, and he would approve anything other than minor additions.[46] Unlike the defendant in *Muniz*, which "provided general safety guidelines[] not specifically directed to the concentration of lead in the workplace" and "intended for these general guidelines to be implemented by local management," 737 F.2d at 149, OSI provided a detailed safety management system which specifically mentioned crushing as a potential hazard,[47] required that these standards be used across all OSI subsidiaries,[48] conducted periodic audits of OSSS, and collected monthly HSE documentation.[49] Finally, OSI conducted many of the same activities that the parent corporation in *Little* performed. *See* 409 S.W.3d at 719-21. OSI also had a "right of control" over the HSE policies at OSSS and participated in all aspects of the safety management system, indicating its intent to be closely involved with the safety policies of its subsidiaries. *See id.* at 717. Accordingly, plaintiffs have raised a genuine issue of material fact with respect to whether OSI affirmatively undertook a duty of safety regarding OSSS's employees.

Similarly, plaintiffs have also raised a genuine issue of material fact with respect to "[t]he second inquiry[,] [which] is whether the proven breach of the found duty was the proximate cause of the injuries." *Johnson*, 749 F.2d at 1133. "Even if plaintiff[s] prove[] the assumption of

---

[46] R. Doc. No. 51-3, at 5-6.

[47] *See, e.g.*, R. Doc. No. 51-5, at 12 ("A safety hazard is anything that could endanger the immediate safety of an employee, for example, a pinch point, crush, or burn hazard.").

[48] R. Doc. No. 51-3, at 5-6.

[49] R. Doc. No. 51-3, at 4; R. Doc. No. 51-12, at 9.

a duty . . . and that the defendant failed to exercise reasonable care to perform this undertaking,

[plaintiffs] can only recover if [they] further prove[] that either (a) the defendant[s'] failure to

exercise reasonable care increased the risk of such harm; or (b) the defendant[s] [have]

undertaken to perform a duty owed by the employer to the injured employee; or (c) harm is

suffered because of reliance of the employer or the injured employee upon the undertaking."

*Bujol*, 922 So. 2d at 1130 (citing *Tillman v. Travelers Indem. Co.*, 506 F.2d 917 (5th Cir. 1975)).

Because Bradshaw worked so closely with the OSSS safety professionals, oversaw the

implementation of the safety management system, and provided and approved safety policies,

and because Durocher adopted the OSI safetyj policies and materials for use at OSSS,[50] "[f]rom

the evidence presented, the jury could reasonably find reliance" pursuant to § 324A(c). *See*

*Johnson*, 749 F.2d at 1134. Because "[a] showing of the existence of any one of the alternative

conditions suffices . . . [the Court] need not address the first two alternatives, for establishment

of any of the three is enough."[51] *Id.* at 1133-34. Accordingly, the Court finds that plaintiffs have

raised a genuine issue of material fact with respect to whether OSI assumed a duty to Morvant

pursuant to § 324A and whether such duty was breached and caused Morvant's death. *See*

*Johnson*, 749 F.2d at 1133.

With respect to International, however, the Court finds that no duty was owed to

Morvant. Durocher's uncontroverted testimony is that International had no involvement with any

safety matters at OSSS.[52] The only evidence that plaintiffs produced with respect to International

---

[50] *See, e.g.*, R. Doc. No. 51-12, at 5 ("[I]t was my decision to not go and rewrite something, that's already written, just adopt it as my own, so that's what I did.").

[51] The Court does not foreclose the possibility that the jury could find that subsections (a) or (b) of § 324(A) are met. Rather, the Court need not go any further because it is sufficient to find that plaintiffs have raised a genuine issue of material fact with respect to at least one of § 324A's subsections. *See Johnson*, 749 F.2d at 1133-34.

[52] R. Doc. No. 51-12, at 12.

is a document entitled "Employee Corrective Action" and dated October 24, 2005.[53] However, that document relates to disciplinary procedures for all employees and it does not pertain particularly to HSE issues. Although Durocher did testify that he assumed the employee corrective action plan would apply to violations of safety policy, he also stated that the implementation of such plan "is a Human Resources function. It has nothing to do with safety."[54] Because plaintiffs have produced no evidence tending to show that International was involved with HSE policies at OSSS, the Court finds as a matter of law that International owed no duty to Morvant.

### B.    Punitive Damages

Plaintiffs admit there is a conflict of law with respect to their claims for punitive damages because Louisiana law would bar any such claim, but Texas law would not.[55] *See* La. Civ. Code. art. 2315.1, 2315.2; *Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 (La. 2002). The parties further agree, and the Court finds, that Texas choice-of-law rules apply to the above-captioned matter and that Texas has adopted the "most significant relationship" test as set forth in the Restatement (Second) of Conflicts of Law.[56] Accordingly, the Court will apply Texas choice-of-law rules to determine which state's law applies with respect to the issue of punitive damages.

The most significant relationship test "entails considering the contacts listed in Restatement § 145 in light of the factors set forth in Restatement § 6."[57] *Nat'l Union Fire Ins.*

---

[53] R. Doc. No. 51-13, at 1.
[54] R. Doc. No. 51-12, at 13.
[55] *See* R. Doc. No. 50, at 4.
[56] R. Doc. No. 40-1, at 6; R. Doc. No. 50, at 4.
[57] Section 6 states:

>    [T]he factors relevant to the choice of the applicable rule of law include
>      (a) the needs of the interstate and international systems,
>      (b) the relevant policies of the forum,
>      (c) the relevant policies of other interested states and the relative interests of

*Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 (5th Cir. 2012). Section 145

states:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>    (a) the place where the injury occurred,
>    (b) the place where the conduct causing the injury occurred,
>    (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>    (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue

The Court will examine each contact in turn.

First, it is undisputed that the injury occurred in Louisiana. However, plaintiffs cite

several cases which suggest that the location of the injury is less important with respect to the

issue of punitive damages.[58] For example, in *Houston North Hospital Properties v. Telco*

*Leasing, Inc.*, 688 F.2d 408, 409 (5th Cir. 1982), the Fifth Circuit stated that the purpose of the

tort of economic duress "is to deter or punish the misuse of economic power, not to compensate

the plaintiff for its injuries," and therefore it reasoned that the state where the conduct occurred

should be afforded more weight than where the injury occurred. *Id.* at 409; *see also Ashland Oil,*

*Inc. v. Miller Oil Purchasing Co.*, 678 F.2d 1293, 1304-05 (5th Cir. 1982) ("[W]hen the primary

purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct

---

those states in the determination of the particular issue,
   (d) the protection of justified expectations,
   (e) the basic policies underlying the particular field of law,
   (f) certainty, predictability and uniformity of result, and
   (g) ease in the determination and application of the law to be applied.
[58] R. Doc. No. 50, at 11-12.

occurred has peculiar significance.") (internal quotation marks omitted). The Court agrees that, with respect to punitive damages, this factor is of diminished importance.

Second, the parties disagree as to where the conduct causing the injury occurred. Plaintiffs contend that OSI's alleged injury-causing conduct occurred "from Bradshaw's office" in Texas,[59] and that because the "policies and standards were promulgated in Texas," this factor should weigh in favor of applying Texas law.[60] Conversely, defendants assert: "Whatever decision[-]making was made in Texas by Mr. Bradshaw and/or Defendants did not occur in a vacuum. It is the impact and implementation of any such decisions which are the basis of Plaintiffs' claims against these Defendants and, regardless of how factually and legally baseless such allegation[s] are, these actions unquestionably occurred in Louisiana."[61]

The Court finds that although some of OSI's relevant conduct did occur in its Texas office, the alleged injury-causing conduct occurred primarily in Louisiana. Bradshaw testified that he made periodic trips to OSSS and conducted safety audits on site.[62] The majority of plaintiffs' allegations refer specifically to deficient policies and personnel at the OSSS facility, and the amended complaint alleges that OSI's negligence was with regard to the development and implementation of policies, including those policies related to safety, specific pieces of equipment, and operations at OSSS.[63] The precise physical location of Bradshaw at the time that he was working or communicating with OSSS HSE professionals is nearly irrelevant to plaintiffs' claims compared to the sufficiency, effect, and implementation of OSI policies at the

---

[59] R. Doc. No. 50, at 8.
[60] R. Doc. No. 50, at 10.
[61] R. Doc. No. 55, at 5.
[62] R. Doc. No. 51-3, at 4-5.
[63] R. Doc. No. 27, at 4-5.

Houma facility.[64] Accordingly, because plaintiffs are challenging the OSI policies and the way they were implemented at the OSSS facility, the Court finds that this factor weighs in favor of applying Louisiana law.

Third, OSI is a Delaware corporation[65] that maintains a place of business in Texas.[66] Plaintiffs are all domiciliaries of Louisiana.[67] Defendants contend that "[t]his factor, however, takes all parties into consideration, including, non-party and decedent's employer, OSSS, which is a Delaware corporation with its principal place of business in Louisiana."[68] Defendant has cited no authority to persuade this Court that it should deviate from the plain language of the Restatement, which requires that the Court consider only the domicile of the *parties*. Because the purpose of punitive damages is to punish and deter future conduct, the Court grants more weight to the place of business of defendants. *See In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 517 F. Supp. 2d 832, 852 (E.D. La. 2007) (Vance, J.) ("[I]n the case of punitive damages, the contacts of the state in which the allegedly wrongful conduct occurred and the state of the defendant's place of business take on a more prominent role."). Accordingly, this factor weighs in favor of applying Texas law.

Fourth and finally, the Court considers the place where the relationship between the parties is centered. Morvant's only connection with defendants was through his employment in Louisiana with their subsidiary, OSSS. Plaintiffs do not offer any argument with respect to this factor. Accordingly, the Court finds that this factor weighs in favor of applying Louisiana law.

---

[64] Furthermore, the Court notes that plaintiffs consented to transfer to this district from the Southern District of Texas pursuant to 28 U.S.C. § 1404. R. Doc. No. 15.

[65] R. Doc. No. 34, ¶ 1.5.

[66] R. Doc. No. 55, at 6.

[67] R. Doc. No. 40-6, ¶¶ 6, 8; R. Doc. No. 50-1, ¶¶ 6, 8.

[68] R. Doc. No. 55, at 6.

Having considered §§ 145 and 6 of the Restatement (Second) of Conflicts of Law, the Court finds that Louisiana law applies with respect to the issue of punitive damages. In particular, the Court finds that this result protects the justified expectations of the parties that the law of the state where the injury occurs should govern the claim; promotes a predictable result that is not dependent on the physical location of a worker such as Bradshaw; and will provide easy determination and application of the law to be applied. *See* Restatement (Second) of Conflicts of Law § 6(d), (f)-(g). Accordingly, as plaintiffs concede, their claims for punitive damages must be dismissed.

### C.     Claims by the Estate

The Texas Civil Practice and Remedies Code § 71.021 permits the estate of the decedent to maintain a survival cause of action, whereas the Louisiana Civil Code Article 2315.1 only permits the estate to bring the survival action in the absence of surviving immediate relatives. Accordingly, there is a conflict of law with respect to whether the estate may maintain a survival cause of action against defendants.

With respect to the viability of the claims by Morvant's estate, the same choice-of-law analysis applies. However, because the viability of a cause of action is not a punitive issue, the importance of the first factor—location of the incident—is not diminished. Accordingly, the Court finds that Louisiana law also applies to this issue and that the estate of Morvant has no cause of action for wrongful death or survival against defendants. *See* La. Civ. Code arts. 2315.1, 2315.2.

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that defendants' motion[69] for summary judgment on all claims is **GRANTED** with respect to Oil States International, Inc. All of plaintiffs' claims against Oil States International, Inc. are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment on all claims is **DENIED** with respect to Oil States Industries, Inc.

**IT IS FURTHER ORDERED** that defendants' motion for partial summary judgment as to plaintiffs' punitive damages claims and the estate's wrongful death and survival claims is **GRANTED**. All of plaintiff's punitive damages claims and the estate's wrongful death and survival claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, March 11, 2014.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[69] R. Doc. No. 42.